UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| DYSON, INC. and DYSON B2B, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>U.S. CUSTOMS AND BORDER PROTECTION,<br>and RODNEY S. SCOTT, in his official capacity<br>as Commissioner of U.S. Customs and Border<br>Protection,<br><br>*Defendants*. | No. 1:26-cv-01159 |

**COMPLAINT**

Plaintiffs Dyson, Inc. and Dyson B2B, Inc. (together, "Plaintiffs"), by and through their undersigned attorneys, hereby allege as follows:

1.      This action challenges the assessment and collection of import duties imposed through a series of executive orders that invoke the International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq*. ("IEEPA"), as purported authority for tariffs on imported merchandise (the "IEEPA Tariffs"). The United States Supreme Court determined on February 20, 2026, that the IEEPA Tariffs are unlawful. *See Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026).

2.      Since February 2025, the President of the United States (the "President") has issued multiple executive orders that purport to impose new tariffs pursuant to IEEPA on merchandise imported into the United States from most countries (collectively, the "IEEPA Tariff Orders").[1]

---

[1]      The IEEPA Tariff Orders include the following: Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 7, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 7, 2025); Exec. Order No. 14197, 90 Fed. Reg. 9183 (Feb.

Plaintiffs are each importers of record and have been required to pay IEEPA Tariffs on their entries, and they have done so on a continuing basis.

3.     This Court, in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), *aff'd in part, vacated in part, remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), and the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), in *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.), have held that IEEPA does not authorize the imposition of the IEEPA Tariffs.  On February 20, 2026, the U.S. Supreme Court affirmed the Federal Circuit in a 6-3 decision.  *See Learning Res., Inc.*, No. 24–1287, 2026 WL 477534 (U.S. Feb. 20, 2026).

4.     Plaintiffs bring this action to obtain a judgment declaring the IEEPA Tariffs and the IEEPA Tariff Orders to be unlawful as applied to Plaintiffs, to suspend liquidation of Plaintiffs' affected entries while this action is pending, to enjoin further unlawful collection from Plaintiffs,

---

10, 2025); Exec. Order No. 14198, 90 Fed. Reg. 9185 (Feb. 10, 2025); Exec. Order No. 14200, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14226, 90 Fed. Reg. 11369 (Mar. 6, 2025); Exec. Order No. 14227, 90 Fed. Reg. 11371 (Mar. 6, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11463 (Mar. 7, 2025); Exec. Order No. 14231, 90 Fed. Reg. 11785 (Mar. 11, 2025); Exec. Order No. 14232, 90 Fed. Reg. 11787 (Mar. 11, 2025); Exec. Order No. 14256, 90 Fed. Reg. 14899 (Apr. 7, 2025); Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 7, 2025); Exec. Order No. 14259, 90 Fed. Reg. 15509 (Apr. 14, 2025); Exec. Order No. 14266, 90 Fed. Reg. 15625 (Apr. 15, 2025); Exec. Order No. 14289, 90 Fed. Reg. 18907 (May 2, 2025); Exec. Order No. 14298, 90 Fed. Reg. 21831 (May 21, 2025); Exec. Order No. 14316, 90 Fed. Reg. 30823 (July 10, 2025); Exec. Order No. 14323, 90 Fed. Reg. 37739 (Aug. 5, 2025); Exec. Order No. 14325, 90 Fed. Reg. 37957 (Aug. 6, 2025); Exec. Order No. 14326, 90 Fed. Reg. 37963 (Aug. 6, 2025); Exec. Order No. 14329, 90 Fed. Reg. 38701 (Aug. 11, 2025); Exec. Order No. 14334, 90 Fed. Reg. 39305 (Aug. 14, 2025); Exec. Order No. 14346, 90 Fed. Reg. 43737 (Sept. 10, 2025); Exec. Order No. 14357, 90 Fed. Reg. 50725 (Nov. 7, 2025); Exec. Order No. 14358, 90 Fed. Reg. 50729 (Nov. 7, 2025); Exec. Order No. 14360, 90 Fed. Reg. 54092 (Nov. 25, 2025); Exec. Order No. 14361, 90 Fed. Reg. 54467 (Nov. 26, 2025); Exec. Order No. 14380, 91 Fed. Reg. 5085 (Feb. 3, 2026); Exec. Order No. 14382, 91 Fed. Reg. 6493 (Feb. 11, 2026); Exec. Order No. 14384, 91 Fed. Reg. 6501 (Feb. 11, 2026).  For the avoidance of doubt, any additional executive orders that may be issued by the President during the pendency of this litigation are incorporated into the above list as "IEEPA Tariff Orders."

and to secure refunds of all IEEPA Tariffs collected from Plaintiffs, liquidated and unliquidated, plus interest.

## PARTIES

5. Plaintiff Dyson, Inc. is an Illinois corporation with its principal place of business at 1330 West Fulton Street, 5th Floor, Chicago, Illinois 60607.

6. Plaintiff Dyson B2B, Inc. is an Illinois corporation with its principal place of business at 1330 West Fulton Street, 5th Floor, Chicago, Illinois 60607.

7. Each Plaintiff is an importer of record of merchandise entered for consumption into the customs territory of the United States. Plaintiffs' imported merchandise has been and continues to be assessed with IEEPA Tariffs under the IEEPA Tariff Orders.

8. Defendant United States of America received the challenged IEEPA Tariffs and is the statutory defendant for this action.

9. Defendant United States Customs and Border Protection ("CBP") is a component agency of the Department of Homeland Security headquartered in Washington, D.C. CBP administers the entry process and assesses and collects duties, taxes, and fees on imported merchandise, including the IEEPA Tariffs.

10. Defendant Rodney S. Scott is the Commissioner of CBP, has overseen the collection of the IEEPA Tariffs, and is named in his official capacity.

11. Defendants are referred to collectively as "Defendants."

## JURISDICTION

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i) because this action is commenced against the United States, its agencies, and

3

its officers, and arises out of laws providing for tariffs and duties and the administration and enforcement of those laws.

13.     Plaintiffs have standing under 28 U.S.C. § 2631(i) and 5 U.S.C. § 702 because Plaintiffs are importers of record that have been required to pay, have paid, and continue to pay the unlawful IEEPA Tariffs, which has caused and continues to cause Plaintiffs to suffer concrete economic injury that is fairly traceable to Defendants' actions and redressable by declaratory, injunctive, and monetary relief.  Absent the requested relief, Plaintiffs will continue to suffer economic injury.

14.     This Court has all powers in law and equity of a United States district court.  *See* 28 U.S.C. § 1585.  In an action commenced under 28 U.S.C. § 1581(i), the Court may enter a money judgment for or against the United States and may grant any other appropriate relief, including declaratory judgments, injunctions, and orders suspending liquidation and directing liquidation or reliquidation as necessary.  *See* 28 U.S.C. § 2643; *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Trade 2021) ("[T]his Court [has] the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.").

15.     This action is timely pursuant to 28 U.S.C. § 2636(i) because it is filed within two years of Plaintiffs' first payments of the IEEPA Tariffs.

## STATEMENT OF FACTS

### I.     The President Issues the IEEPA Tariff Orders

16.     On January 20, 2025, the President declared a national emergency pursuant to sections 201 and 301 of the National Emergencies Act, Pub. L. No. 94-412, 90 Stat. 1255 (1976) (50 U.S.C. §§ 1601–1651) in Proclamation No. 10886, 90 Fed. Reg. 8,327, 8,327 (Jan. 20, 2025). The emergency was declared in connection with drug trafficking and immigration.

17.     Beginning on February 1, 2025, the President issued the first of the IEEPA Tariff Orders imposing additional *ad valorem* duties on imports from Canada, Mexico, and China purportedly in response to the declared national emergency (collectively, the "Trafficking Tariffs"). *See* Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 7, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 7, 2025). The IEEPA Tariff Orders targeting Canada, Mexica, and China with the Trafficking Tariffs have been supplemented and amended by later IEEPA Tariff Orders.[2]

18.     On April 2, 2025, the President issued an executive order that declared a national emergency pursuant to the National Emergencies Act to address the "[l]arge and persistent annual U.S. goods trade deficits" and imposed an additional baseline tariff on imports from nearly all countries, along with additional country-specific tariff rates on identified trading partners (collectively, the "Reciprocal Tariffs"). *See* Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 7, 2025). Subsequent executive orders and agreements with trading partners have modified various aspects of the Reciprocal Tariffs, including, but not limited to, the effective dates, country-specific rates, and implementation details.[3]

---

[2]     For Canada, see Exec. Order No. 14197, 90 Fed. Reg. 9183 (Feb. 10, 2025); Exec. Order No. 14226, 90 Fed. Reg. 11369 (Mar. 6, 2025); Exec. Order No. 14231, 90 Fed. Reg. 11785 (Mar. 11, 2025); Exec. Order No. 14325, 90 Fed. Reg. 37957 (Aug. 6, 2025). For Mexico, see Exec. Order No. 14198, 90 Fed. Reg. 9185 (Feb. 10, 2025); Exec. Order No. 14227, 90 Fed. Reg. 11371 (Mar. 6, 2025); Exec. Order No. 14232, 90 Fed. Reg. 11787 (Mar. 11, 2025). For China, see Exec. Order No. 14200, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11463 (Mar. 7, 2025); Exec. Order No. 14256, 90 Fed. Reg. 14899 (Apr. 7, 2025); Exec. Order No. 14357, 90 Fed. Reg. 50725 (Nov. 7, 2025).

[3]     *See* Exec. Order No. 14259, 90 Fed. Reg. 15509 (Apr. 14, 2025); Exec. Order No. 14266, 90 Fed. Reg. 15625 (Apr. 15, 2025); Exec. Order No. 14298, 90 Fed. Reg. 21831 (May 21, 2025); Exec. Order No. 14316, 90 Fed. Reg. 30823 (July 10, 2025); Exec. Order No. 14326, 90 Fed. Reg. 37963 (Aug. 6, 2025); Exec. Order No. 14334, 90 Fed. Reg. 39305 (Aug. 14, 2025); Exec. Order No. 14346, 90 Fed. Reg. 43737 (Sept. 10, 2025); Exec. Order No. 14358, 90 Fed. Reg. 50729 (Nov. 7, 2025); Exec. Order No. 14360, 90 Fed. Reg. 54092 (Nov. 25, 2025).

19.    Each of these IEEPA Tariff Orders relies on IEEPA as the asserted source of authority for imposing tariffs and directs the Harmonized Tariff Schedule of the United States ("HTSUS") to be modified so that the IEEPA Tariffs may be collected by CBP at the time of entry.

## II.    CBP Collects the IEEPA Tariffs from Plaintiffs

20.    CBP is charged with the assessment and collection of duties on imported merchandise.  *See generally* 19 U.S.C. § 1500.  In connection with the IEEPA Tariff Orders, CBP has collected additional duties by requiring importers to report secondary HTSUS classifications, including Chapter 99 subheadings, that correspond to the duty rates mandated by the IEEPA Tariff Orders.

21.    When merchandise is entered into the United States, the importer of record pays estimated duties based on the declared value, country of origin, and HTSUS classification of the goods.  *See* 19 U.S.C. § 1484(a)(1)(B).

22.    CBP later finalizes duties payable for each entry through the liquidation process. Liquidation is the computation and ascertainment of duties on an entry.  *See* 19 U.S.C. §§ 1500(c)–(d), 1505(b); 19 C.F.R. §§ 159.1–.2.

23.    After CBP liquidates an entry, CBP may treat the liquidation decision (and the resulting duty assessment) as final unless the importer files a timely protest.  19 C.F.R. § 159.1. Congress and CBP's implementing regulations render CBP's liquidation decisions "final and conclusive" absent a protest and impose strict protest-filing deadlines keyed to the liquidation (or notice of liquidation) date.  19 U.S.C. § 1514(a), (c)(3).

24.    Plaintiffs are importers of merchandise enjoyed by millions of United States consumers.  Plaintiffs import merchandise into the United States from countries subject to the

IEEPA Tariff Orders.  In connection with those imports, CBP has assessed IEEPA Tariffs on Plaintiffs' entries, and Plaintiffs have paid IEEPA Tariffs as required for entry.

25.    As of the date of this Complaint, approximately 70 affected entries on which Plaintiffs have paid IEEPA Tariffs have liquidated.  Plaintiffs have also paid IEEPA Tariffs on approximately 4,000 additional entries that have not yet liquidated.  Plaintiffs continue to pay IEEPA Tariffs on imports on an ongoing basis in order to reach United States consumers.

26.    Plaintiffs seek refunds of all IEEPA Tariffs collected from and paid by Plaintiffs through resolution of this litigation, with interest from the date the IEEPA Tariffs were unlawfully collected from Plaintiffs, as provided by law.  *See* 19 U.S.C. § 1505(c); 19 C.F.R. § 24.36(a).

## III.    IEEPA Does Not Authorize the President to Impose IEEPA Tariffs

27.    IEEPA permits the President to take a range of actions to "investigate," "regulate," "prohibit," "compel," "nullify," or "prevent" certain transactions and actions during a declared "national emergency" to address an unusual and extraordinary threat.  *See* 28 U.S.C. § 1702(a)(1). The statute authorizes regulation of certain financial and property-related transactions involving foreign interests.  *Id.*  IEEPA does not permit the President to impose the IEEPA Tariffs for multiple reasons recognized by the U.S. Supreme Court in its recent decision finding the IEEPA Tariff Orders to be unlawful.

28.    IEEPA is sanctions legislation, not tax legislation.  In granting the power to regulate, block, prohibit, and nullify,  IEEPA grants no power to tax.  *Learning Res., Inc. v. Trump*, 2026 WL 477534, at *11 (holding that the term "'regulate' in IEEPA does not include taxation"). The use of IEEPA to impose *ad hoc* tariffs and taxes would unlawfully grant to the Executive virtually limitless power to impose new taxes at will, without process or advance notice, and

without the involvement of the Congress, to which the Constitution expressly and exclusively

grants the power to impose tariffs.  U.S. Const., Art. I, Sec. 8.

29.    IEEPA does not grant authority to impose tariffs or other customs duties on

imported merchandise.  *Learning Res., Inc. v. Trump*, 2026 WL 477534, at *14 ("[T]he terms of

IEEPA do not authorize tariffs").  The statutory text does not reference or otherwise authorize the

President to impose, modify, or rescind tariffs, duties, or customs exactions.  *Id.* ("IEEPA contains

no reference to tariffs or duties.").

30.    The President's claimed tariff-making authority under IEEPA exceeds the statute's

grant of power; Congress did not clearly delegate to the President authority to impose broad tariffs

under IEEPA.  *See Learning Res., Inc. v. Trump*, 2026 WL 477534, at *13 ("The President asserts

the extraordinary power to unilaterally impose tariffs of unlimited amount, duration, and scope . .

. . IEEPA's grant of authority to 'regulate . . . importation' falls short.").  Thus, the IEEPA Tariff

Orders are *ultra vires*, and the past and continuing imposition of IEEPA Tariffs is unconstitutional.

31.    All IEEPA Tariffs paid and that continue to be paid by Plaintiffs are, and have

always been, unlawful exactions and must be refunded.  The IEEPA Tariff Orders nonetheless

remain in effect and IEEPA Tariffs continue to be applied to Plaintiffs' imports.  Accordingly,

Plaintiffs are compelled to file the instant complaint in order to obtain refunds, plus interest, of

IEEPA Tariffs paid on their imports, as well as injunctive relief.

## STATEMENT OF CLAIMS

### COUNT I
### (The IEEPA Tariff Orders and IEEPA Tariffs Are *Ultra Vires* and Void *Ab Initio*)

32.     Plaintiffs repeat and reallege paragraphs 1 through 31 as if fully set forth herein.

33.     CBP's assessment and collection of the IEEPA Tariffs, and related implementation actions undertaken to enforce the IEEPA Tariff Orders through the HTSUS and entry process, constitute final agency action.

34.     Because the IEEPA Tariff Orders were issued without statutory authority to impose tariffs, the IEEPA Tariff Orders were *ultra vires* and void *ab initio*, and Defendants' implementation and collection of IEEPA Tariffs pursuant to the IEEPA Tariff Orders constituted unlawful exactions contrary to law.

35.     Plaintiffs are entitled to relief setting aside the unlawful agency action, enjoining further collection of IEEPA Tariffs from Plaintiffs, and ordering refunds of IEEPA Tariffs unlawfully collected on Plaintiffs' entries, plus interest in accordance with the law.

### COUNT II
### (The IEEPA Tariff Orders and IEEPA Tariffs Are Unconstitutional)

36.     Plaintiffs repeat and reallege paragraphs 1 through 31 as if fully set forth herein.

37.     Clause 1 of Article I, Section 8, of the U.S. Constitution provides Congress with the "Power To lay and collect Taxes, Duties, Imposts and Excises."  U.S. Const. art. I, § 8, cl. 1.

38.     IEEPA authorizes the President, in times of a declared national emergency, to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit" the "importation or exportation" of "property in which any foreign country or a national thereof has any interest."  50 U.S.C. § 1702(a)(1)(B).  IEEPA does not include any clause granting the President powers beyond those expressly listed in the statute.

39.    Under the nondelegation and major questions doctrines, Congress must speak clearly if it intends to authorize the Executive to impose measures of vast economic and political significance such as sweeping tariffs. IEEPA contains no authorization for tariff-making authority and no meaningful standards that would cabin such authority.

40.    If IEEPA were interpreted to authorize the IEEPA Tariff Orders or IEEPA Tariffs, such an interpretation of the statute would render IEEPA unconstitutional as applied and the IEEPA Tariff Orders unlawful.

41.    Plaintiffs therefore seek a declaration that the IEEPA Tariff Orders are void *ab initio* under the Supreme Court's decision in *Learning Resources* as to Plaintiffs; that Defendants' collection of the IEEPA Tariffs constituted an unlawful exaction; enjoining Defendants from enforcing the IEEPA Tariff Orders as to Plaintiffs; and ordering refunds of all duties collected from Plaintiffs pursuant to the IEEPA Tariff Orders, with interest as provided by law.

## COUNT III
### (Declaratory Judgment – 28 U.S.C. § 2201)

42.    Plaintiffs repeat and reallege paragraphs 1 through 31 as if fully set forth here.

43.    An actual controversy exists regarding Defendants' authority to assess and collect IEEPA Tariffs on Plaintiffs' entries and regarding Plaintiffs' entitlement to refunds of unlawfully collected tariffs, which unlawful collection is ongoing.

44.    Plaintiffs seek a declaration that the IEEPA Tariff Orders and the resulting IEEPA Tariffs are unlawful, as written and as applied to Plaintiffs, and that Defendants lack authority to continue to assess or collect such tariffs from Plaintiffs.


**PRAYER FOR RELIEF**

45.     WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and:

    a. Declare that the IEEPA Tariff Orders are *ultra vires*, unlawful, void *ab initio*, and without effect as applied to Plaintiffs;

    b. Declare that Defendants lack authority to assess or collect IEEPA Tariffs on Plaintiffs' entries;

    c. Order the reliquidation of any of Plaintiffs' entries that are subject to the IEEPA Tariff Orders that have been liquidated, and order such further measures as are necessary to preserve Plaintiffs' right to complete relief;

    d. Suspend liquidation of Plaintiffs' entries that are subject to the IEEPA Tariff Orders for the duration of this action, and order such further measures as are necessary to preserve Plaintiffs' right to complete relief;

    e. Enjoin Defendants from further implementing, enforcing, or collecting IEEPA Tariffs from Plaintiffs;

    f. Order Defendants to refund all IEEPA Tariffs collected from Plaintiffs, with interest as provided by law, through liquidation or reliquidation as necessary, or alternatively enter a money judgment in the same amount;

    g. Award Plaintiffs interest as established by law on all amounts refunded and all money judgments, pursuant to 19 U.S.C. § 1505(c), and as otherwise provided by law;

    h. Award Plaintiffs their costs and expenses, including reasonable attorneys' fees, in bringing this action;

    i.   Grant such other relief as the Court deems just and proper.


Dated:  New York, New York
         February 23, 2026

                           HERBERT SMITH FREEHILLS
                           KRAMER NEW YORK LLP

                           By:    */s/ Maxwell D. Herman*
                                   Maxwell D. Herman, Esq.
                                   Jonathan C. Cross, Esq. (*admission pending*)
                                   1177 Avenue of the Americas
                                   New York, NY  10036
                                   Tel.: (917) 542-7810
                                   Maxwell.Herman@hsfkramer.com
                                   Jonathan.Cross@hsfkramer.com

                                   *Attorneys for Plaintiffs Dyson, Inc.*
                                   *and Dyson B2B, Inc.*